THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE J. BAKER, Defendant-Appellant.

First District (2nd Division)   Nos. 78-514, 78-1351

Opinion filed October 23, 1979.

412

Frederick F. Cohn, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Joel A. Eisen-Stein, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant Willie Baker was found guilty of robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—1) and sentenced to a term of two to six years imprisonment.

Defendant appeals, contending: (1) he was not proved guilty beyond a reasonable doubt; (2) the trial court improperly prevented him from presenting relevant evidence; (3) the State destroyed favorable evidence; (4) the trial court improperly permitted impeachment of the defendant with a prior conviction for burglary that was constitutionally invalid; (5) comments made by the prosecution in its final argument denied him a fair trial; and (6) the trial court indicated to the jury its disbelief in the credibility of defendant and his witness which denied him a fair trial.

The alleged robbery occurred on December 5, 1975, at about 7:30 p.m. in the vicinity of 1036 North Wood Street in Chicago. The victim testified that at about 7:20 that evening he intended to go to a church meeting being held about five blocks away from his house. As he was about to descend his front stairs, a car occupied by two men pulled up and one of the men called to him. Not recognizing either of the men, he went back into his house, waited for a few minutes and then left for the meeting. As he was walking, he saw the same car pull up and park about five houses away. The victim stated that when he saw the driver, whom he identified in court as the defendant, get out of the car, he crossed to the other side of the street and started to walk back toward his house. He said that before he knew it, the defendant was behind him and said, "this is a stick up." The victim told defendant he didn't have much and pulled out $5 from his wallet. After taking the money, defendant told the victim he thought the victim had something of more value and to follow him to the car. The victim testified that he noticed defendant was carrying what appeared to be a rifle wrapped in black plastic with a string tied around it.

The victim told defendant that the only thing of value he had was his watch and gave it to him, after which time he said the defendant "took off."

The victim testified that he called the police that evening to report the incident and described his assailant as 5'11", 180 pounds, having a mustache, short hair, and wearing a black leather coat. The victim said he did not know exactly how long the incident lasted but estimated it could have lasted 1½ to 2 minutes. He testified that the street was fairly well lit by sodium vapor city streetlights, and that he stood facing the defendant for about 1½ to 2½ minutes at a distance of 3' to 4'.

The next day the police gave the victim a photo album containing about 160 photos of black males. The victim testified that he looked through the photos, starting at the back of the album and identified photograph number 32 as a picture of the man who robbed him. At trial the victim stated that he was positive the picture was of the man who robbed him but stated that he may have said at a preliminary hearing that he "wasn't exactly positive."

Later that same day the victim picked out the defendant from a police lineup. At trial the victim stated that he had not been told that the man whose picture he had picked out would be present in the lineup. On cross-examination, it was brought out that at a preliminary hearing the victim testified that the police told him the man whose picture he identified lived in the Lewis Hotel, that they would pick him up, and that he would be present in the lineup. When confronted with these statements, the victim stated that the police did not actually tell him that the defendant lived in the hotel, rather he overheard the officers' conversation to that effect, and that he did not recall stating that he knew the defendant would be in the lineup.

Officer William O'Brien testified that he handed the photo album to the victim, who at the time was seated alone in the back seat of a squad car. He identified the photo album in court and stated that the picture the victim picked out was of the defendant. O'Brien did not recall saying that the defendant lived in a particular hotel and denied telling the victim that the defendant would be present in the lineup. Officer Donald Korte, O'Brien's partner, who was also present in the squad car at the time the victim identified the defendant's photo, testified that he might have told O'Brien that the defendant lived in the hotel, admitted telling the victim that he would attempt to arrest the person whose picture the victim identified, but denied saying that person would be present in the lineup. O'Brien testified that he and Korte arrested the defendant at about 5:30 p.m. the day after the incident occurred, in the lobby of the Lewis Hotel, which was located about three blocks from the scene of the crime. He stated that after being informed of the charge, the defendant denied any

participation. The officer stated that when arrested, defendant was wearing a military trench coat and that incident to the arrest, defendant was searched but no proceeds of the crime were recovered. The officers stated that they did not search the defendant's room because they did not have a warrant.

The defense began its case by reading to the jury a stipulation that at a prior hearing the victim testified he thought he was sure, but was not exactly positive, that the man whose picture he identified was the man that robbed him; that an officer told him the man would be picked up and then would be in a lineup in order to see whether he could identify the man again; that he was told that the man whose picture he identified lived in his neighborhood; and that when shown a front and side view of the lineup and asked how many of the men had heavy beards, he responded by marking the photographs to reflect the fact that the three men other than the defendant had heavy beards.

Ida Brown, defendant's girl friend, testified for the defendant that on December 5, 1975, at about 4 or 5 p.m., she visited defendant in his room at the Lewis Hotel. When she arrived there, she put her money in defendant's dresser drawer. She testified as to certain events that transpired at the hotel involving herself, defendant, and the hotel desk clerk Bobby Washington between 5:30 p.m. and 9 or 10:30 p.m.

Bobby Washington testified that he worked part-time as a desk clerk at the Lewis Hotel. He stated that on December 5, 1975, he worked from 5:30 to 9 p.m. He stated that at about 7:30 or 7:45 that evening, Ida Brown came to the desk and told him that the defendant had taken her carfare. Washington said he went to the defendant's room to talk to him and defendant accompanied him to the lobby where the defendant had a few words with Brown and the two began fighting. According to Washington, another man by the name of Floyd tried to intervene which resulted in a fight between Floyd and defendant. Washington stated that after the fight, defendant did give Brown carfare. He remembered seeing Brown leave but could not recall what time. He stated that he got off work about 9 or 9:15 that night and did not see Brown sitting in the lobby or return to the lobby after she left, and that he had not seen the defendant that day prior to the time he went up to the defendant's room. Washington also stated that there was a back door to the hotel but it was always kept locked.

The defendant testified that his girl friend, Ida Brown, came to visit him on December 5, 1975, but could not remember what time she arrived. After about two hours, Brown told him she had to go visit her sister. Defendant said he "got mad and jumped on her and popped her up-side the head." He said he took her carfare because he wanted her to stay. He said after hitting her four or five times she ran downstairs crying. About 15 or 20 minutes later, Washington came up to his room and asked

why he did not give Brown the carfare. He then went down to the lobby with Washington to talk to Brown. He said that Brown was "still crying and slopping off at the lip, and I popped her upside the head again." Defendant testified that a friend of his, Floyd, tried to intervene and a fight between Floyd and the defendant resulted. He then left the hotel with Floyd to buy wine at a nearby tavern. When they returned he looked for Brown but did not see her. He said he went up to his room with Floyd and smoked "some reefer" and drank the wine. He went back down to the lobby about 10 or 11 p.m. but did not see Brown. The defendant also stated that after he first went down to the lobby with Washington and before the fight with Floyd, he went back up to his room to get his television set which he put behind the front desk and at that time he saw Brown in the hallway of the lobby with "Oscar and them drinking wine."

## I.

Defendant first contends the identification testimony of one witness, the victim, uncorroborated by other evidence was insufficient to prove him guilty of robbery beyond a reasonable doubt.

Defendant argues that the victim had a limited opportunity to observe his assailant, that the victim's testimony at trial was discredited by inconsistencies with his testimony at a prior hearing, and that the alibi testimony was not discredited by anything substantial and cannot be disregarded.

■■ The testimony of a single witness, who had ample opportunity to form a positive identification, is sufficient to convict even though such testimony is contradicted by the accused. (*People v. Stringer* (1972), 52 Ill. 2d 564, 569, 289 N.E.2d 631.) In determining whether an accused has been positively identified, this court has considered whether the witness had sufficient time to observe the offender at a reasonable distance and under adequate lighting. (*People v. McGee* (1976), 38 Ill. App. 3d 889, 893, 350 N.E.2d 13; *People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 327, 379 N.E.2d 847.) The trier of fact determines the credibility of the identification witness and the weight to be given his testimony. *People v. Weatherspoon*, 63 Ill. App. 3d 315, 326.

■■ Although the robbery in the instant case took only a few minutes, the victim testified that he observed his assailant face-to-face for 1½ to 2½ minutes at a distance of 3' to 4' on a street illuminated by streetlights. The victim reported the incident to the police immediately after it occurred and was able to give a detailed description of his assailant. The next day, the victim identified the defendant after being shown a photo album containing about 160 pictures of black males. The victim viewed approximately 130 of these pictures before coming to the picture of the defendant which he identified as the man who robbed him. There has

been no showing that this photograph identification procedure was suggestive as to raise a substantial likelihood of misidentification. Several hours later, the victim picked out the defendant from a police lineup consisting of four black males with similar physical characteristics. We find such an identification to be positive and convincing.

■■ The inconsistencies between the trial testimony of the victim and his testimony at a prior hearing do not nullify the victim's testimony but rather go to the weight the trier of fact gives to that testimony. (*People v. Henderson* (1976), 36 Ill. App. 3d 355, 367, 344 N.E.2d 239.) These inconsistencies were brought to the attention of the jury during the cross-examination of the victim and portions of the victim's prior testimony about which defendant now complains were read before the jury at the opening of the defendant's case-in-chief.

■ Whether defendant's alibi evidence—corroborated by witnesses Brown and Washington—created a reasonable doubt of guilt was a question primarily for the trier of fact. (*People v. Berland* (1978), 74 Ill. 2d 286, 307, 385 N.E.2d 649.) Defendant cites cases where courts would not disregard the alibi testimony in situations where the identification testimony was found to be doubtful, vague, and uncertain. (*People v. Gardner* (1966), 35 Ill. 2d 564, 221 N.E.2d 232; *People v. De Suno* (1933), 354 Ill. 387, 188 N.E. 466; *People v. McGee* (1961), 21 Ill. 2d 440, 173 N.E.2d 434; *People v. Kilgore* (1973), 15 Ill. App. 3d 862, 305 N.E.2d 328, *aff'd* (1974), 59 Ill. 2d 173, 319 N.E.2d 489; *People v. Carroll* (1970), 119 Ill. App. 2d 314, 256 N.E.2d 153.) Unlike those cases, we have found the identification testimony in the instant case to be positive. The trier of fact is not obligated to believe alibi testimony over the positive identification of an accused, even though the alibi testimony may be presented by a greater number of witnesses. (*People v. Catlett* (1971), 48 Ill. 2d 56, 64, 268 N.E.2d 378.) Here the alibi evidence was not without inconsistencies and discrepancies, and the exact whereabouts of the defendant at the time the robbery took place was not clearly established.

A determination of guilt by a jury will not be set aside by a reviewing court unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) There is sufficient credible evidence in the record to sustain defendant's conviction for robbery.

## II.

Defendant contends that the trial court improperly prevented him from presenting relevant evidence by restricting his cross-examination of the victim when it sustained the State's objection to his inquiry as to how often the victim had been at a certain shopping area. The court found such an inquiry to be irrelevant and immaterial.

Defendant argues on appeal that his inquiry was relevant to the reliability of the victim's identification in that both the victim and defendant lived in the same neighborhood and if the victim shopped in the same area, he may have seen the defendant prior to the time of the robbery causing the defendant to look familiar. Defendant relies on *People v. Lewis* (1974), 18 Ill. App. 3d 281, 284, 309 N.E.2d 784, wherein the court stated, "* * * an accused has a right to question identifying witnesses concerning any matter which goes to explain, modify or discredit what has been stated in direct examination."

■ It is equally true that the latitude to be allowed in cross-examination of witnesses rests largely in the discretion of the trial court; such cross-examination should be kept within fair and reasonable limits, and it is only in a case of clear abuse of such discretion, resulting in manifest prejudice to the defendant, that a reviewing court will interfere. *(People v. Halteman* (1956), 10 Ill. 2d 74, 86, 139 N.E.2d 286.) The record does not disclose that defense counsel provided the trial court with any explanation as to why his inquiry was relevant or material, nor was an offer of proof made. Under these circumstances, it cannot be said that the trial court abused its discretion to the manifest prejudice of the defendant. See *People v. Curtis* (1970), 123 Ill. App. 2d 384, 387-88, 259 N.E.2d 397; *People v. Jones* (1976), 40 Ill. App. 3d 850, 859, 353 N.E.2d 375.

### III.

Defendant next contends he was denied a fair trial by the State's purposeful destruction of favorable evidence which as a result limited defendant's impeachment of the victim.

Prior to trial, at a hearing on the defendant's motion to suppress identification, the victim was shown photographs of the lineup from which he testified three of the four men pictured had heavy beards. The victim then complied with defense counsel's request to mark on the border of the pictures the three men with heavy beards. These photos were not offered into evidence. Prior to trial, the State cut off the border of the photographs which contained the markings. When this was questioned by defense counsel at trial, the State said it had informed defense counsel of this prior to trial and felt that any markings made on the photographs should be done in the presence of the jury. Defense counsel said that at the conclusion of the preliminary hearing, he had moved that the photographs be impounded and the court ruled that the photographs could be kept in the custody of the State's Attorney's office with the assurance that they would not be altered or destroyed. Such a request or order is not reflected in the record.

After a side-bar discussion among counsel and the court concerning whether such an impoundment order existed, defense counsel stated:

"If the State is willing to stipulate at a prior occasion the witness here when asked to mark on those two exhibits the persons with heavy beards, the witness marked the three people other than the defendant, *if they will stipulate to that, the matter is resolved.*" (Emphasis added.)

The State suggested that defense counsel show the victim the photos and ask him to mark the persons with heavy beards. If the victim did not mark the same three persons, the State agreed to stipulate that at the previous hearing the victim had marked three of the four men pictured which did not include the defendant as having heavy beards.

The victim was then called to the stand, was shown the photographs and asked by defense counsel how many of the men had heavy beards. The victim responded two. The victim was then asked if at a previous hearing he had been shown the same photographs and asked the same question to which he responded three men had heavy beards. The victim replied that he did not remember. Defense counsel was then allowed as part of its case to read into evidence and in the presence of the jury the agreed upon stipulation.

■■ The photographs of the lineup as they appear in the record show only two men with heavy beards. Defendant sought to use the victim's prior testimony and markings on the photographs to impeach the victim's credibility in regard to his ability to observe. This was accomplished by his cross-examination of the victim, his reading the stipulation into evidence, and his closing argument when he made this point while circulating the photographs among the jurors. Regardless of the propriety of the State's action, which cannot be ascertained and evaluated from the record, the defendant has failed to demonstrate how he was prejudiced. We find the argument to be without merit.

## IV.

Defendant contends that the trial court should not have permitted impeachment of defendant with a prior conviction for burglary. In July 1973, defendant pleaded guilty to burglary. Prior to his trial in the instant case, defendant's motion *in limine* to prevent the introduction of this prior conviction into evidence was denied. Defendant argues that the prior conviction was constitutionally invalid in that it was the result of a guilty plea not taken in accordance with the mandates of Illinois Supreme Court Rule 402 (Ill. Rev. Stat. 1973, ch. 110A, par. 402) or of *Boykin v. Alabama* (1969), 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709.

This same type of argument was made in the recent case of *People v. Burgin* (1979), 74 Ill. App. 3d 58, 392 N.E.2d 251, wherein the defendant contended that two prior convictions were constitutionally invalid since based on involuntary and unintelligent guilty pleas which did not

substantially comply with Supreme Court Rule 402. This court in *Burgin* found that in order to justify the collateral attack upon the previous pleas, it was necessary to show a constitutional violation; that because compliance with Rule 402 was procedural only as opposed to constitutional, the defendant could not raise any point upon the failure of the trial court to comply substantially with Rule 402; and that the only contention open to defendant was whether the two previous convictions on pleas of guilty violated the constitutional requirement set forth in *Boykin v. Alabama.*

The defendant in the instant case, by his argument, is attempting a collateral attack upon his prior plea of guilty. Applying the foregoing reasoning, the proper determination to be made is whether defendant's prior plea was taken in violation of constitutional requirements. The constitutional requirement as set forth in *Boykin v. Alabama* is that the record must affirmatively show that the defendant entered his plea of guilty voluntarily and understandingly. 395 U.S. 238, 244, 23 L. Ed. 2d 274, 280, 89 S. Ct. 1709, 1713; see also *People v. Reeves* (1971), 50 Ill. 2d 28, 276 N.E.2d 318; *People v. McCoy* (1979), 74 Ill. 2d 398, 402, 385 N.E.2d 696.

■■ The record in the instant case contains a report of proceedings on the prior plea which reveals that defendant was represented by counsel; that the plea was entered after a pretrial conference and agreement with the prosecution; that the trial court informed the defendant of his right to grand jury proceedings, his right to trial by a jury or by the court, and his right to appeal an adverse determination; that the trial court informed the defendant he was charged with burglary and could be sentenced to a term of imprisonment for 1 to 20 years and again informed him of his right to a jury trial; that the defendant told the court in the presence of his attorney that he understood all these things, still desired to enter a plea of guilty and waived his right to a jury trial; and that defendant stipulated that the factual basis for the charge would be the same as the evidence the court had heard the previous week at the determination of probable cause. This record affirmatively shows that the defendant entered his plea of guilty voluntarily and understandingly.

## V.

Defendant next contends he was denied a fair trial by improper remarks made by the prosecutor during closing arguments. On review we keep in mind that improper remarks will not constitute reversible error unless they constituted a material factor in the conviction (*People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363), resulted in substantial prejudice to the accused (*People v. Nilsson* (1970), 44 Ill. 2d 244, 248, 255

N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881), or the verdict would have been different had the comments not been made (*People v. Naujokas* (1962), 25 Ill. 2d 32, 38, 182 N.E.2d 700).

### A.

Defendant argues that the prosecutor improperly gave his personal opinion of the defendant's credibility when in his rebuttal, the prosecutor said to the jury:

"I suggest to you if you believe those Defense witnesses, if you believe Willie Baker and his girlfriend told you the truth, I suggest to you that you meet me out in the hallway afterwards because if you believe that, I would like to sell you the Brooklyn Bridge because if you buy that, you will buy anything."

Immediately following this remark, the trial court sustained defendant's objection and reminded the jury to consider only the testimony of the witnesses as evidence.

In his closing argument, a prosecutor may discuss the witnesses and their credibility (*People v. Franklin* (1976), 42 Ill. App. 3d 408, 422, 355 N.E.2d 634), but he may not inform the jury of his individual opinion or belief of a defendant's guilt unless he states, or it is apparent, that such opinion is based solely on evidence (*People v. Anthony* (1976), 41 Ill. App. 3d 1025, 1029, 355 N.E.2d 218). A prosecutor may call a witness' testimony false, if in so doing, he relies on the evidence and inferences from it to support his conclusion. *People v. Owens* (1977), 46 Ill. App. 3d 978, 994, 361 N.E.2d 644.

■■ In the instant case, although the prosecutor's comment could have been better stated, the language used, "I suggest to you * * * " does not clearly indicate that he was expressing his individual opinion on defendant's credibility. (Compare *People v. Anthony* (1976), 41 Ill. App. 3d 1025, 1030.) The prosecutor made the statement after summarizing the evidence against the defendant and in response to defense counsel's argument wherein defense counsel argued the veracity of the defense witnesses and improperly told the jury they could evaluate his (defense counsel's) credibility. The rhetorical device used by the prosecutor, when viewed in the context of the argument, was a comment on the credibility of the defense witnesses based upon the evidence and was not used by the prosecutor as a means of injecting his own personal opinion into the case.

### B.

Defendant contends that error was committed when the prosecutor in closing argument commented on the defendant's failure to call "Floyd,

Oscar, and the others" to testify in defendant's behalf. Defendant argues that Floyd and Oscar were not alibi witnesses and were merely present some time after the incident occurred.

■■ A recognized exception to the general rule barring prosecutorial comment on defendant's failure to produce certain witnesses who are equally accessible to both parties, is where defendant introduces evidence regarding his activities with potential witnesses to establish an alibi and then does not produce them at trial. *People v. Blakes* (1976), 63 Ill. 2d 354, 359-60, 348 N.E.2d 170; *People v. Owens* (1977), 46 Ill. App. 3d 978, 994.

■■ By defendant's own testimony he placed Floyd and Oscar in the hotel lobby with him on the night the robbery occurred. Defendant testified that while arguing with his girl friend in the lobby, Floyd intervened, which resulted in a fight between himself and Floyd. He then left the hotel with Floyd to buy wine, and the two of them returned to defendant's room. Defendant also testified that when he brought his television set down to the lobby he saw his girl friend in the hallway drinking with Oscar and the others. Defendant was unable to specify as to the time these events took place. The record does not support defendant's contention that these potential witnesses were present only after the robbery took place, but rather supports an inference that they could have been present during the time in question. The other defense witnesses could only estimate as to what time they saw defendant at the hotel. Time was important since the robbery occurred within three blocks of the hotel. The persons to whom the defendant referred might have been able to establish defendant's presence in the hotel at the relevant time. In view of this, the prosecutor's comment was not improper.

## C.

Defendant contends that the prosecutor argued matters to the jury which he knew to be untrue.

During the State's cross-examination of the defendant, the following colloquy took place:

"Mr. O'Keefe: Q. Mr. Baker, you are not nervous today are you, testifying up there?

A. Well, I never been up on nothing like this before.

Q. You never testified before like that?

A. No.

Q. Mr. Baker, didn't you come in here last week and sit up there and practice with Mr. Cohn?

A. That's not testifying in front of people.

Q. But you sat up there and Mr. Cohn sat back here and you ran through your testimony?

A. We talked about it.

Q. And wasn't Mrs. Brown here the same time you did that, wasn't she in the courtroom when you practiced?

A. I believe so.

Q. Yes, and didn't Mrs. Brown get up there and practice with Mr. Cohn last week the same day?

A. Yes, he told us how to sit in the chair."

At the conclusion of the State's cross-examination, no redirect examination was conducted and the defense rested. The next day defense counsel requested that the case be reopened so that another witness could be presented. Upon denial of this request, the defendant was allowed to make an offer of proof in which a deputy sheriff stated she was present in the courtroom during a court recess when defendant's attorney had the defendant and defense witness Brown take the stand and asked them their names, what they liked to watch on television, and what their favorite baseball game was.

The prosecutor in his closing argument stated that the defendant and defense witness Brown practiced their testimony with the defense attorney in an empty courtroom. The defendant objected on the basis that the prosecutor knew there were other people in the courtroom. The trial court sustained the objection stating that the courtroom is a public courtroom, and it was not known who was present in the courtroom at that time. The prosecutor continued arguing that the defendant and Ms. Brown were called to the stand and the defense attorney "put them through their paces, rehearsed them * * * ." Defendant objected, stating that there was no testimony that the defense attorney put these witnesses "through their paces" and that the prosecutor knew the truth. The trial court sustained the objection, stating that only the testimony of the witness could be considered as evidence.

Defendant contends that the prosecutor argued to the jury that defense counsel had defendant and his alibi witness, Brown, rehearse their testimony in an empty courtroom when he knew that in court were court personnel, and that defendant and his witness were asked innocuous questions.

■■ Contrary to defendant's assertion, there is no way of knowing based on the record whether the prosecutor knew if other persons were present in the courtroom when the incident occurred or that only innocuous questions were asked. What does appear in the record is defendant's testimony that while sitting in the witness chair during a court recess, he talked about his forthcoming testimony with his attorney and that Ms. Brown was also present and sat in the witness chair. A prosecutor is entitled to comment on the testimony that is given by the accused and to

draw legitimate inferences therefrom even if those inferences are unfavorable to the defendant. (*People v. Franklin* (1976), 42 Ill. App. 3d 408, 416, 355 N.E.2d 634.) The prosecutor's comment that defendant rehearsed his testimony could legitimately be inferred from defendant's own testimony. The inference that defense witness Brown did the same is not as clear in the record, but in view of the fact that defendant's objection was immediately sustained and the trial court stated that only the testimony of the witness could be considered as evidence, no substantial prejudice resulted to the defendant.

## VI.

Defendant also contends he was denied a fair trial when (i) the prosecutor argued matter not in evidence by stating that the victim would never forget the defendant's face when the victim did not so testify, (ii) the trial court indicated, in the presence of the jury, that it believed the defendant's alibi was fabricated, and (iii) the trial court erred in not permitting the case to be reopened so that the testimony of the deputy sheriff in regard to the questions asked of the defendant and defense witness Brown by defense counsel during the court recess could be presented.

● 12 However, defendant failed to specifically raise these issues in his written motion for a new trial. The failure of a defendant to specifically raise an issue in his written motion for a new trial constitutes a waiver of that issue on appeal, and the issue cannot be urged as a ground for reversal on review. (*People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227; Ill. Rev. Stat. 1975, ch. 38, par. 116—1(c).) However, in spite of the fact such issues are waived, this court has, in its discretion, considered such issues on their merits. (See *People v. Gray* (1977), 47 Ill. App. 3d 1026, 1032, 365 N.E.2d 501; *People v. Smith* (1977), 53 Ill. App. 3d 395, 410-11, 368 N.E.2d 561.) We have also reviewed each of these issues and are satisfied no prejudicial error affecting substantial rights was committed.

For the reasons set out above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P. J., and HARTMAN, J., concur.