THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM WASHINGTON, Defendant-Appellant.

First District (4th Division)    No. 79-1154

Opinion filed November 6, 1980.

Morris D. Witney, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Christine A. Campbell, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

At the conclusion of a bench trial held in the circuit court of Cook County, defendant, William Washington, was found guilty of rape (Ill. Rev. Stat. 1979, ch. 38, par. 11—1) and guilty of unlawful restraint (Ill. Rev. Stat. 1979, ch. 38, par. 10—3). He was sentenced only for rape to a term of four years to four years and a day. Defendant appeals from the rape conviction.

On appeal, defendant contends: (1) he was not proven guilty beyond a reasonable doubt; (2) he was denied the effective assistance of counsel; and (3) the trial court committed reversible error by unreasonably restricting the scope of cross-examination.

We affirm.

At trial, the State presented the testimony of the complainant-victim, the arresting officer, and the examining physician.

The complainant testified that on February 6, 1977, at approximately

9 p.m., she had just left her home on the south side of Chicago with the intent to go to a destination on 131st Street approximately five miles away. Outside of her home she saw defendant sitting in his parked van. She recognized the defendant as a man named "William" whom she had seen on a prior occasion with one of her friends. A conversation ensued and defendant offered to take her to her destination.

Instead of taking her to 131st Street, defendant drove her to 142d Street where he parked the van next to an open field. There were two houses in the neighborhood both of which had all the lights out. The inside of the van had two swivel chairs, one for the driver and one for the passenger. The back of the van was partitioned off by a curtain. In the back of the van was a couch.

After a few minutes, defendant got out of his seat, went behind the passenger's seat, and put his arms around complainant. A struggle ensued in which the complainant was overpowered. Defendant dragged her to the back of the van, threw her on the couch and attempted to have sexual intercourse with her by force. Defendant finally entered the complainant but she forced him out; whereupon, defendant threw her on the carpeted floor and entered her again. All during this time, complainant screamed intermittently and kicked and scratched at defendant. Defendant contained her by choking her.

Eventually, complainant saw a bright light flash through the windshield. Defendant stopped molesting her and told her to be quiet. However, she jumped up and went through the curtains and screamed she was being raped. Outside of the driver's door was a police officer. Complainant got out of the van and eventually defendant was arrested.

The police officer, complainant, and defendant went to the police station in the officer's patrol car with defendant handcuffed in the back. Complainant said that on the way to the police station defendant pleaded with her to drop any charges and told her that he had not really been trying to hurt her and he had never done anything like that before.

Sergeant Robert Vinson was the arresting officer on the scene. He testified he was on routine patrol when he saw the van parked on 142d Street. He stopped his vehicle facing the van and shined his spotlight through the windshield. He got out of his vehicle and approached the van on the driver's side. As he approached, he heard muffled sounds. Then he saw complainant coming through the curtain which partitioned the inside of the van. Complainant screamed she was being raped. He saw that her clothes were in disarray and her panties were down around her knees. Complainant attempted to get the driver's door open, which she did not open until Sergeant Vinson indicated to her that she had to unlock the door first. When complainant got out of the van she grabbed Vinson and told him defendant was trying to rape her. She was crying and shaking. Vinson broke loose from her grip when he saw defendant come through

the curtain perspiring and pulling up his zipper. He then placed the defendant under arrest.

On the way to the police station Vinson heard defendant plead with complainant to drop the charges. He heard defendant say that he had not been trying to hurt her and if she dropped the charges defendant would take her where she had wanted to go.

Dr. H. B. Sultani testified that complainant came to his office on the day after the incident. She appeared shaken and upset. She asked him to check for venereal disease. He made a pelvic examination and found several bruises on her inner thighs and on the genital area. He also found a scratch on the inside of her vagina. Dr. Sultani testified that he had only seen these kinds of injuries in cases in which there had been a forceful entry.

Defendant testified in his own behalf. He said he had picked up complainant, whom he had never seen before, after she had asked him for a ride. Shortly after he drove away, she told him she was going to a friend's house to sell $10 worth of "Columbian reefer," and if defendant took her to her destination she would get him "high and have some fun" with him in the back of the van. She then took a cellophane bag from her purse. In the bag was a brown substance from which she rolled a cigarette which they both smoked. As they travelled along, complainant told defendant she was in the Army and would do anything to get out, including getting pregnant.

Defendant said he parked the van on 142d Street at complainant's suggestion, after which she rolled another cigarette which they both smoked. Then, complainant went into the back of the van and sat in a large "chair" and he joined her there where he started "playing" with her with his fingers. After a while, complainant told him she would stay with him for a little longer if he gave her $10. Defendant continued using his fingers on her but said he never had sexual intercourse with her because he was unable to obtain an erection since he was afraid complainant was already pregnant and was trying to "trap" him.

Defendant was still using his fingers on complainant when he saw a bright light flash through the window. Defendant got up and went to the driver's seat where he sat down. He saw a police officer outside his window. Complainant then came up and sat down in the passenger's seat. Defendant contends that at this time both of them were fully dressed and their clothes were not in disarray.

Defendant rolled down his window and the officer asked what was going on. The officer asked this several times until complainant said, "He's trying to get some from me." The officer asked if she meant she was being raped. The officer then flashed his flashlight on complainant's purse and she suddenly became hysterical and screamed she was being raped.

Defendant said the officer then pulled him out of the van and arrested him. While this was going on, complainant departed from the passenger's door and was out of sight for several minutes. The three of them went to the police station.

After hearing the above evidence and closing arguments of counsel, the trial court found defendant guilty of rape and unlawful restraint.

OPINION

I

Defendant first contends he was not proven guilty beyond a reasonable doubt of the offense of rape. He claims that complainant's narration of the events that occurred is incredible and completely lacks support from the testimony of Sergeant Vinson and Dr. Sultani. In support of this contention, defendant argues the following.

The record shows that defendant was 5 feet 8 inches tall and weighed 160 pounds. The record does not indicate complainant's size but does indicate she was in the Army. Complainant testified that she fought with defendant during the entire time the alleged rape was occurring. She said she scratched at defendant's face and defendant choked her several times. However, no evidence was presented to show that complainant or defendant had any bruises or cuts on their bodies except for Dr. Sultani's testimony as to the injuries he found around complainant's pelvic area. Both Sergeant Vinson and Dr. Sultani testified that they noticed no other physical injuries to complainant, and Sergeant Vinson did not notice any scratches on defendant's face. Defendant contends that in view of his size and complainant's being in the Army, it would have been impossible for complainant or him to not have any manifestations of physical injuries if the fight complainant alleged occurred actually happened.

The record allegedly shows that complainant testified she was screaming during the entire incident. However, Sergeant Vinson, when he approached the van, heard only muffled sounds and did not hear the alleged screams. Thus, argues defendant, complainant's alleged screams never took place. The record also shows that at one point Sergeant Vinson asked complainant if she wanted to press charges and defendant contends that this shows that even Sergeant Vinson doubted complainant's allegations.

Defendant points to complainant's failure to seek immediate medical attention on the night of the incident and claims this tends to show that her allegations were untrue. Also, when she finally went to a doctor the next day it was only for the purpose of determining if she had venereal disease. Defendant contends that if complainant had actually been raped she would have told her doctor. The record shows that Dr. Sultani did not test complainant for traces of sperm. Defendant claims that the lack of

any evidence showing sperm in complainant creates a doubt that the alleged rape occurred. Defendant also contends that Dr. Sultani's testimony was insufficient to support complainant's allegation that she had been raped because he testified that her internal injuries could have been caused by some object other than a male penis.

Finally, defendant contends that the actual reason complainant cried rape in front of Sergeant Vinson was to give her time to dispose of the alleged marijuana she had with her that night.

■■ A defendant must be proven guilty beyond a reasonable doubt of every element of the offense charged. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432; *People v. Daniels* (1979), 75 Ill. App. 3d 35, 393 N.E.2d 667.) However, proof of guilt beyond a reasonable doubt does not require proof of guilt beyond any possibility of doubt. (*People v. Williams* (1977), 66 Ill. 2d 478, 363 N.E.2d 801.) Though a defendant and his alleged victim tell conflicting stories, it is for the trier of fact, and not a reviewing court, to determine which story is credible. See *People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.

In the present case, if complainant's allegations were completely unsubstantiated by any other evidence, then perhaps defendant's contention that he was not proven guilty beyond a reasonable doubt would have some merit. But we believe that the testimony of Sergeant Vinson and Dr. Sultani was sufficient to substantiate complainant's allegations and that all of the evidence shows that defendant was guilty beyond a reasonable doubt.

Though complainant was in the Army, we believe that such a fact cannot create an inference that she was strong enough to defend herself from defendant, nor does it create an inference that she would necessarily be bruised in any struggle with defendant or that she could actually inflict easily discernable physical injuries on the defendant. That complainant was choked during the struggle does not in itself show that she would have bruises on her neck.

Though Sergeant Vinson testified that he did not hear any screams as he approached the van, our examination of the record shows that complainant testified she had stopped screaming approximately a minute before the officer arrived, and thus Sergeant Vinson's testimony does not even conflict with complainant's. Though Sergeant Vinson asked complainant if she wanted to press charges, such a statement standing alone does not create the inference that he believed complainant had not been raped. More than likely, Sergeant Vinson merely wanted to be assured that complainant would swear out a complaint against defendant because it is well known that rape victims are particularly reluctant to go forward with proceedings against a defendant because of the loss of dignity and trauma involved.

■■ That complainant did not see a doctor until the day after the incident does nothing to lend her allegations incredibility. She did not leave the police station until late at night. Dr. Sultani was her own doctor, and she obviously could have preferred to see him as opposed to any other doctor. She could easily have believed that she could not see Dr. Sultani until he went to his office the next day. That complainant did not tell Dr. Sultani she had been raped could reasonably have been the result of her reluctance to repeat the events of the previous night. Though no evidence of sperm was presented, such evidence is not necessary to prove rape. (See Ill. Rev. Stat. 1979, ch. 38, par. 11—1.) Though Dr. Sultani testified that the injuries he found on complainant could have been caused by something other than the penetration of the female sex organ by the male sex organ, he said the injuries were probably the result of a forceful entry and this substantially supported complainant's claim that she had been raped.

In the present case, there is complainant's testimony that she was raped. There is Sergeant Vinson's testimony that complainant made an immediate outcry of rape when he approached the van. There is the doctor's testimony substantiating the claim of rape. In light of this evidence, we necessarily hold that defendant was proven guilty beyond a reasonable doubt.

## II

Defendant next contends he was denied the effective assistance of counsel. In support of this contention he describes several events which occurred both before and during the trial.

Defendant retained private counsel to defend him. However, that particular attorney appeared only twice during the course of the proceedings, once during a pretrial hearing, and the second time to argue post-trial motions. At trial, defendant was represented by two associates of that attorney, both of whom were allegedly recent admittees to the bar in Illinois. Prior to trial, 22 different hearing dates were set—some for the purpose of arraigning the defendant and some to consider pretrial matters and to set a date for trial. At a few of these hearing dates, no one from the attorney's office appeared. At many of the others, a law clerk appeared to seek continuances. The retained attorney appeared at one pretrial hearing only after he had been threatened with contempt. Defendant contends that his retained attorney's conduct described above shows that he completely disregarded his responsibility in this case and tends to show defendant was denied the effective assistance of counsel.

Defendant also points to several instances which occurred during the trial which he claims prove he was denied the effective assistance of counsel. In particular, defendant describes instances in which defendant's

trial counsel was unable to elicit allegedly crucial testimony because of counsel's alleged lack of knowledge of the rules of evidence.

One instance occurred when counsel was conducting direct examination of defendant. One of defendant's theories in this case was that complainant's actual purpose for screaming rape when the police officer came up to the van was to give her time to dispose of the brown substance she was carrying in a cellophane bag in her purse. Defendant's counsel repeatedly tried to elicit from defendant his opinion that this brown substance was marijuana, but each time counsel attempted to do this the State objected, which objections were sustained because of counsel's failure to establish a proper foundation for defendant's opinion. Defense counsel eventually abandoned the attempt to establish the substance as marijuana.

Another instance was counsel's inability to get into evidence a complaint for preliminary examination that had been signed by complainant on the night of the incident. Defendant was eventually indicted for rape. However, prior to the indictment complainant had signed the complaint for preliminary examination in which defendant was charged only with attempt rape. Defendant contends that the introduction of this complaint into evidence was important because it attacked complainant's credibility. He argues that since complainant signed a complaint for only attempt rape, her allegation at trial that an actual rape had occurred would not have been believed if defense counsel had been able to get the complaint into evidence. However, defense counsel was unable to get the complaint into evidence because he failed to mention it during his cross-examination of complainant and tried to get it into evidence during his direct examination of defendant. Apparently, his attempt to get it into evidence to attack complainant's credibility failed because he did not first give complainant the opportunity to explain her signing of the complaint during her testimony.

Defendant also points to counsel's failure to cross-examine complainant concerning her testimony about having seen defendant before the night of the incident and having known the defendant as a man named "William." Apparently, defendant believes that counsel should have questioned complainant about her prior knowledge of defendant because counsel knew defendant would testify that he had never seen complainant before. Whether such cross-examination would have accomplished anything is unclear, but defendant asserts it was important.

Defendant points to defense counsel's cross-examination of Dr. Sultani as showing his inability to conduct a proper defense. Defense counsel elicited from Dr. Sultani that the injuries he observed on complainant's pelvic area could possibly have been caused by something other than a male sex organ. However, defense counsel failed to pursue

the matter by asking Dr. Sultani what other objects could have caused the injuries. Defendant contends that if counsel had pursued the matter further then evidence "highly favorable" to defendant would have come out.

Defendant points to defense counsel's failure to object to Sergeant Vinson's testifying that he heard defendant say to complainant on the way to the police station that defendant had not been trying to hurt her and if she dropped the charges defendant would take her where she wanted to go. Apparently, the basis for an objection would have been that the State failed to mention in its answer to discovery that defendant had made this statement in the presence of a police officer.

Finally, defendant points to counsel's cross-examination of complainant. At one point, counsel was examining complainant as to what occurred immediately after defendant parked his van on 142d Street. Counsel asked complainant if she noticed defendant consume anything such as an alcoholic beverage or a narcotic. Complainant testified she saw defendant take out a "joint" though she could not recall whether defendant smoked it. Counsel asked her if she meant marijuana and she said yes. Defendant contends this line of cross-examination shows counsel's complete ineffectiveness because he actively solicited from the complaining witness that defendant had committed another crime that night, the possession of marijuana. Thus, alleges defendant, counsel purposely elicited testimony that prejudiced his own client.

Counsel in the present case was privately retained. For a reviewing court to set aside a conviction based on the ineffectiveness of such counsel, the defendant must show that his representation was of such a low caliber that it amounted to no representation at all or reduced the court proceedings to a farce or sham. *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677; *People v. Torres* (1973), 54 Ill. 2d 384, 297 N.E.2d 142.

■■ Our examination of the entire record shows that defendant's representation by counsel was adequate in this case. Though we will not set out in detail all of the instances when counsel was able to effectively cross-examine the State's witnesses, suffice it to say that there are numerous instances in which counsel was able to bring out discrepancies in their testimony, an example of which was counsel's ability to show that no bruises were seen on complainant's neck and no scratches were seen on defendant's face even though complainant testified she scratched defendant and defendant choked her. Counsel showed at trial a complete familiarity with the events in the case and was able to bring out adequately defendant's allegations which contradicted complainant's.

Also, many of the alleged failures on the part of counsel were not failures at all. When counsel was questioning Dr. Sultani, he knew that

defendant would testify he had only used his fingers on complainant. Counsel asked Dr. Sultani if the injuries he found on complainant's pelvic area could have been caused by something other than the entry of a male sex organ. When Dr. Sultani said it was possible, counsel asked him if fingers could have caused the injury. The State objected to the question but before the court could sustain the objection, Dr. Sultani answered no. Counsel obviously abandoned further questioning on this issue because the one answer that could have helped defendant was an admission that fingers could have caused the injuries, an admission that would have tended to verify defendant's testimony.

Though counsel did not object to Sergeant Vinson's testimony concerning what defendant said to complainant in the police car, it is clear that Sergeant Vinson's testimony was just as helpful to defendant's case as it may have been harmful. Complainant had testified that defendant said he had not been trying to hurt her and that he had never done anything like that before—apparently referring to the act of rape. Sergeant Vinson said defendant told complainant he had not been trying to hurt her and if she dropped the charges he would take her where she had wanted to go. Thus, counsel, by allowing Vinson to testify as he did, showed there was some discrepancy in complainant's testimony, and the alleged admission defendant had made in the car was not as clear an admission of the act of rape as complainant's testimony had shown.

Counsel's questioning of complainant as to whether defendant had any marijuana was also not a failure on counsel's part. He asked the question because he planned to attack complainant's testimony through defendant's testimony, which would allege that complainant gave him the alleged marijuana cigarette and complainant was trying to hide this fact.

■■ As to defendant's retained attorney's pretrial conduct, we do not know how this conduct in any way prejudiced defendant at trial. Though that attorney allowed his associates to handle the trial, and these associates were allegedly recent admittees to the bar, this does not create a presumption of incompetence of defendant's counsel. Apparently, defendant would have us hold that new attorneys should be presumed incompetent, and this we cannot do.

Therefore, we hold that defendant's contention that he was denied the effective assistance of counsel is without merit.

### III

Defendant's final contention is that he was denied a fair trial by the court's unreasonably restricting his scope of cross-examination. Defendant points to two instances when this occurred.

First, when defense counsel was cross-examining complainant, she told him that she had previously seen defendant on one prior occasion

with a friend approximately six months before the incident. Counsel then asked her where she had seen defendant on the prior occasion. The State objected because it believed that counsel's attempt to elicit testimony as to where complainant had seen him before was irrelevant to the events which occurred on the night of the incident. This objection was sustained.

Second, when defense counsel was questioning Dr. Sultani about what could have caused complainant's injuries other than a male sex organ, he asked Dr. Sultani if it could possibly have been someone's fingers. This was objected to by the State as dealing in mere speculation. Dr. Sultani answered no, but the trial court sustained the objection and told defendant that it was mere speculation.

Defendant contends that the trial court should have allowed him to question complainant as to where she had seen defendant before because he was trying to get complainant to admit that she had not seen defendant before, as defendant contended, and thus defendant was trying to show a discrepancy in complainant's testimony. Defendant contends that he should have been allowed to question Dr. Sultani as to the possible causes of complainant's injuries because he could have perhaps brought out that some other object actually inflicted the injuries and thus the penetration of the female sex organ by the male sex organ required to be shown to prove rape would not have been proven.

■■■ The latitude to be allowed in cross-examination of witnesses rests largely within the discretion of the trial court, and a reviewing court will not find error in the trial court's limiting cross-examination unless there has been an abuse of discretion. (*People v. Baker* (1979), 78 Ill. App. 3d 411, 396 N.E.2d 1174.) In the present case, we cannot find any abuse of discretion on the part of the trial court. Where complainant had seen defendant before was of little or no importance to the issues before the court. Also, it is mere speculation that defendant would have been able to make complainant admit that she had not seen defendant before by his line of questioning. What other objects could possibly have caused complainant's injuries was of little or no importance because the answer would have been speculation and there was no other evidence to even indicate that any other object was used except for defendant's testimony that he used his fingers. Also, as we previously noted, defense counsel abandoned this line of questioning of Dr. Sultani because he had already discovered what he wanted to know—whether fingers could have caused the injuries.

Accordingly, for the reasons noted, we affirm the judgment of the trial court.

Affirmed.

JIGANTI and ROMITI, JJ., concur.