THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GARY DOTSON, Defendant-Appellant.

First District (3rd Division)    No. 79-1486

Opinion filed August 5, 1981.

118

Jeffrey Schulman, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joel Eisenstein, and Lawrnce T. Krulewich, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

A jury found the defendant, Gary Dotson, guilty of rape and aggravated kidnapping in the Circuit Court of Cook County. The defendant was sentenced to two concurrent terms of 25 to 50 years in the Illinois Department of Corrections. On appeal the defendant contends

that he was not proved guilty beyond a reasonable doubt; that improper conduct by the prosecutor denied him a fair trial, and that his sentence was excessive.

At trial the complainant, a high-school student, testified that on Saturday, July 9, 1977, she was working at a restaurant in a shopping plaza in Homewood, Illinois. She left the restaurant alone at approximately 8:45 p.m. to walk home. While walking through the parking lot of the plaza, the complainant noticed an automobile coming towards her. She jumped out of the way and fell to the ground. Two men stepped out of the car and forced her into the back seat of the vehicle. One man, identified as the defendant, got into the back seat with her. The second man got into the front seat with the driver.

The complainant testified that when the car left the parking lot the defendant sat on top of her, while the passenger in the front seat hooked his arm around her knee. The defendant tore at and removed her clothing. She struggled as the defendant attempted to kiss her. The defendant then inserted his penis into her vagina.

The complainant further testified that after the defendant completed the act of intercourse, he attempted to write words on her stomach with a broken beer bottle. Subsequently, the driver pulled over to the side of the road. She was pushed out of the car and her clothing and purse were thrown at her. The ordeal lasted approximately two hours.

The complainant dressed and began walking. Shortly thereafter a passing squad car stopped to assist her, and she was escorted to the Homewood Police Station. A female police officer accompanied her to the emergency room of South Suburban Hospital. Dr. Andrew Labrador testified that when he examined her in the emergency room he observed a swelling of her head, bruises on her arm, markings on her breast and raised red scratches on her stomach, which looked like letters. Dr. Labrador also stated that he gave the complainant a pelvic examination which revealed abrasions to the hymen and trauma to the vaginal area.

On July 12 the complainant met with a police artist at the Homewood Police Station, who sketched a picture of the rapist. During the next several days the complainant examined several hundreds of photographs at various suburban police stations, but made no identifications. On July 15 she identified the defendant from a picture in a mug book at the Country Club Hills Police Station. Later that evening she identified the defendant in a lineup at the Homewood Police Station.

On cross-examination the complainant admitted that in her description to the police she did not mention that her attacker had a mustache. She also stated that when she viewed the lineup at the police station, she indicated to the police that the fifth individual in the lineup might have

been the passenger who was in the front seat. However, the complainant was unable to make a positive identification.

Timothy Dixon, a forensic scientist employed by the State of Illinois, testified that he examined the panties which were worn by the complainant on the night that she was attacked. He analyzed certain human seminal material, which was present in the panties, and concluded that the material came from a group B secretor. Dixon further testified that the defendant was a group B secretor. He further stated that a pubic hair, which was removed from the panties, was similar to that of the defendant but dissimilar to that of the victim.

On cross-examination Dixon admitted that he also tested blood stains which were present on the complainant's panties and blouse. Although he was unable to determine the type of blood responsible for the stains, his testing revealed the presence of A and B antigens. Because both the complainant and the defendant had type B blood, they were not responsible for the presence of the A antigens. Dixon explained, however, that other substances, such as perspiration, dust, wood or detergent, could have caused the presence of the A antigens.

The defendant, who was 22 years of age at the time of trial, testified that on July 9, 1977, he left his home in Country Club Hills before noon with Terry Julian. After spending some time at a local bar, the two men picked up Terry's girlfriend, Pam Olsen. The three friends drove to the home of Terry's mother in Chicago, where they watched television and drank beer until 8:30 or 9 p.m. At that time the defendant, Bill Julian and Karen Lawrence drove to Country Club Hills with the intention of attending several parties.

The group stopped at the home of Michael Marcum for a few minutes. Thereafter, they went to the home of Tom Martens, who accompanied them to various other homes. Eventually, they arrived at a home in Province Town. Because he was tired, the defendant slept in the back seat of the car while the others went to a party inside the home. The next thing the defendant remembers was waking up at home the following morning. The defendant denied raping the complainant.

On cross-examination, the defendant admitted that the fifth individual in the police lineup was his friend, Michael Marcum.

Terry Julian, Pam Olson, Karen Lawrence and Thomas Martens testified on behalf of the defendant and corroborated his alibi. Terry and Pam asserted that the defendant did not leave the home of Terry's mother until 9 p.m. Karen and Thomas testified that the defendant slept in the car while the others attended the party. These two witnesses also stated that they took the defendant to his home between 12 and 12:30 a.m.

Barbara Dotson, the defendant's mother, testified that the defendant has had a mustache since he was 15 years of age.

I

The defendant initially contends that he was not proved guilty beyond a reasonable doubt. He attacks the complainant's identification because she failed to inform the police that her attacker had a mustache. In addition, the defendant points out that he presented numerous alibi witnesses whose testimony was unimpeached by the State. The defendant also asserts that the State's expert witness, Dixon, testified that he found type A blood on the complainant's clothing. Because the complainant and the defendant have type B blood, the defendant insists that some other individual was responsible for the blood stains. The defendant concludes that these three factors raise a reasonable doubt of his guilt as a matter of law.

It is well established that the positive and credible testimony of one identification witness is sufficient to support a conviction if the witness had the opportunity to observe the accused for a sufficient length of time. (*People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601; *People v. Lomax* (1980), 89 Ill. App. 3d 651, 411 N.E.2d 1212; *People v. Barber* (1979), 70 Ill. App. 3d 540, 388 N.E.2d 833.) In the instant case the complainant had ample opportunity to observe the defendant during the two-hour period the assailant kept her in the back seat of the automobile. Her identification of the defendant was positive and unwavering. Not only did the complainant identify the defendant at trial, she also made two positive pretrial identifications. The complainant picked the defendant's picture from a mug book after viewing hundreds of photographs at various police stations. She also identified the defendant as her assailant at the police lineup.

■■ The defendant attacks the complainant's identification because of her failure to inform the police that the assailant had a mustache. When the identification of the witness is positive, precise accuracy in describing facial characteristics is unnecessary. (*People v. Tate* (1978), 64 Ill. App. 3d 1, 380 N.E.2d 976.) As the court discussed in *People v. Smith* (1977), 52 Ill. App. 3d 583, 367 N.E.2d 756, *cert. denied* (1978), 436 U.S. 961, 57 L. Ed. 2d 1127, 98 S. Ct. 3079, experience tells us that an identification is not usually made by distinguishing separate features but by the total impression made upon the witness. The complainant's failure to describe the mustache only affects the weight of her testimony and does not destroy the credibility of her identification. *People v. Tate.*

The defendant's assertion that Dixon testified that he found type A blood on the complainant's clothing is inaccurate. Dixon specifically stated that he was unable to determine the type of blood responsible for the stains. Dixon did testify that his testing revealed the presence of A and B antigens. Although Dixon did admit that a person with type B blood could not have been responsible for the presence of the A antigens, he

explained that the A antigens could have resulted from contact of the clothing with perspiration, dust, wood or detergent. Contrary to the defendant's assertions, this scientific evidence does not raise a reasonable doubt concerning his guilt.

The defendant also asserts that the fact that his alibi witnesses were unimpeached raises a reasonable doubt concerning his guilt. It is the province of the jury to weigh and balance identification testimony against the alibi presented by the defense. (*People v. Smith* (1978), 59 Ill. App. 3d 480, 375 N.E.2d 941.) The jury is not obliged to believe alibi testimony over the positive identification of an accused, even if the alibi testimony is presented by a greater number of witnesses. *People v. Baker* (1979), 78 Ill. App. 3d 411, 396 N.E.2d 1174.

A criminal conviction will not be set aside by a reviewing court unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) Our review of the record convinces us that the evidence presented by the State provided an ample basis for the jury's determination of guilt.

## II

■■ The defendant also argues that improper conduct by the prosecutor in his rebuttal argument denied him a fair trial.

The defendant first contends that the prosecutor expressed his personal belief that the defendant was guilty of rape. It is improper for a prosecutor to express his own opinion of the defendant's guilt. (*People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 295.) However, the prosecutor may argue that the defendant is guilty when he states, or it is apparent, that such opinion is based solely on the evidence. (*People v. Ramey* (1979), 70 Ill. App. 3d 327, 388 N.E.2d 196.) We believe that it is apparent that the prosecutor's argument concerning the defendant's guilt was based solely on the evidence presented at trial, which linked the defendant to the brutal rape of the victim.

■■ The defendant also asserts that the prosecutor's reference to the complainant as a virgin was erroneous because there was no evidence to support this statement. We disagree. Dr. Labrador's testimony that the complainant suffered abrasions of the hymen supports the inference that the complainant was a virgin prior to the rape.

■■ The defendant also objects to the prosecutor's reference to the fact that Bill Julian and Michael Marcum failed to testify on behalf of the defendant. A general rule of law bars a prosecutor from commenting on the defendant's failure to produce a witness who is equally accessible to both parties. However, an exception to the rule exists where the defendant

introduces evidence regarding his activities with a potential witness to establish an alibi, and then does not produce the witness at trial. *People v. Crusoe* (1979), 79 Ill. App. 3d 778, 398 N.E.2d 1095; *People v. Baker* (1979), 78 Ill. App. 3d 411, 396 N.E.2d 1174.

■■ In the instant case the defendant's answer to the State's motion for pretrial discovery indicated that both Julian and Marcum would testify concerning the defendant's alibi. At trial, the defendant claimed that he was with Julian and saw Marcum at the time the rape occurred. Thus, the prosecutor's comments concerning Julian and Marcum's failure to testify were permissible. *People v. Crusoe; People v. Baker.*

■■ The defendant additionally objects to the prosecutor's statement that the defendant's alibi witnesses were liars. Although it is improper for a prosecutor to call the defendant or his witness a liar, it is not prejudicial error if such characterization was based upon the evidence or was a reasonable inference which could be drawn from the evidence. (*People v. Smith* (1977), 52 Ill. App. 3d 583, 367 N.E.2d 756; *cert. denied* (1978), 436 U.S. 961, 57 L. Ed. 2d 1127, 98 S. Ct. 3079.) In *People v. Smith* the court noted that the record revealed a direct and substantial contradiction between the testimony of the complaining witness and that of the defendant and his witness. The court concluded that one could reasonably infer from the evidence that the defendant and his witness lied, and that the comment did not result in substantial prejudice to the defendant.

A similar situation concerning the contradiction in testimony exists in the instant case. Although we do not condone the prosecutor's choice of vocabulary, we cannot say his comment resulted in substantial prejudice to the defendant.

The defendant's final objection concerns the prosecutor's reference to Michael Marcum as the passenger in the automobile. The prosecutor made the following remarks over strenuous objections by the defense counsel:

> "[Assistant State's attorney] What befuddles the mind of any sensible person is never having seen Mr. Dotson, nor never having seen Mr. Michael Marcum * * * nor never having seen Michael Marcum out of the hundreds or more people here in the south suburbs, out of seven million people in the Chicago Metropolitan area, who does she also identify? Mr. Michael Marcum as the passenger.
>
> [Defense counsel] Objection. That is a misstatement. * * * She never identified the man as the passenger.
>
> [Assistant State's attorney] That's right. Not positively.
>
> [The Court] Any statement that is not based upon the evidence will be disregarded.

[Assistant State's attorney] There's a reason why Mr. Marcum wasn't positively identified by [complainant]. The reason was he was, of course, for the most part in the front seat of that car. * * * There is a reason. Of course, Mr. Marcum spent most of the time, in fact, the whole time in the front seat of the car. [Complainant] said the only time she saw him was when he leaned back to see how the letters were etched in her stomach; to see how Mr. Dotson was doing. * * * That's why she doesn't positively identify him. What inference can be drawn from that? [Complainant] is an honest, God fearing, young lady, who would not make a misidentification of a man she was not sure about. When she first saw Michael Marcum, she told the Police as honestly as she could, I am just not positive of Mr. Michael Marcum. He doesn't get charged * * * but what does that show you about the identification of Mr. Dotson? She is sincere. She told you and the Police she couldn't be positive about the passenger. She told you she will never, never forget that man's face; the face of Gary Dotson, so her failure to positively identify Mr. Marcum. * * * Once again, it only lends more credence to the positive identification of Mr. Dotson."[1]

The defendant first contends that the prosecutor's argument, that the complainant's possible identification of Marcum reinforced her identification of the defendant, was improper. An argument by the prosecutor is proper as long as it is based upon relevant evidence in the record or legitimate inferences therefrom. *People v. Wirth* (1979), 77 Ill. App. 3d 253, 395 N.E.2d 1106.

■■ In the instant case, it was the defendant himself who introduced into evidence the testimony concerning the complainant's uncertain identification of Marcum. Defense counsel argued in his closing argument that if the complainant made a mistake in identifying one suspect, it was possible that her identification of the defendant was also a mistake. In rebuttal, the prosecutor responded that because the complainant would not make an identification unless she was absolutely certain of it, her identification of the defendant was all the more credible. We believe that the prosecutor's argument was based on legitimate inferences from the evidence and a permissible response to defense counsel's argument.

The defendant also contends that the prosecutor's conclusion that Marcum was the passenger in the automobile was not supported by the evidence. Assumed facts not based on any evidence in the record cannot

---

[1] During his rebuttal argument, the prosecutor placed a circle over Marcum's picture in the lineup photograph. Outside the presence of the jury, the trial court censured the prosecutor for this action. The defense counsel moved for exclusion of the photograph; however, the trial court held that the error was harmless and instructed the jury to disregard the marking on the photograph.

be argued to the jury. (*People v. Hayes* (1979), 70 Ill. App. 3d 811, 388 N.E.2d 818.) We agree with the defendant that there was no evidence presented by the State to establish that Marcum was the passenger. Therefore, the prosecutor's references to Marcum as the passenger were erroneous.

The defendant asserts that this error requires a reversal of his conviction and a remand for a new trial. We do not believe, however, that the prosecutor's reference to Marcum as the passenger was a material factor in the defendant's conviction or resulted in substantial prejudice to the defendant. (*People v. Baker* (1979), 78 Ill. App. 3d 411, 396 N.E.2d 1174; *People v. Price* (1979), 76 Ill. App. 3d 613, 394 N.E.2d 1256.) Whether Marcum was the passenger in the automobile had no bearing on the defendant's guilt. Although the defendant suggests that the prosecutor argued that the defendant was guilty because of his association with Marcum, our review of the record reveals no such suggestion in the prosecutor's argument.

In summary, we find that the prosecutor's statement that the defense witnesses were liars was improper, and his reference to Marcum as the passenger was not based on the evidence. However, because we believe that neither comment was a material factor in the defendant's conviction or resulted in substantial prejudice to the defendant, the comments were harmless error.

### III

The defendant further argues that the sentence of two concurrent terms of 25 to 50 years was excessive. He contends that the trial court should have considered his age, his strong family ties, his lack of a record of violent crimes and the fact that he was employed. Our review of the record reveals that the trial court did consider these factors at the sentencing hearing. Moreover, by way of aggravation the trial court noted the brutality which accompanied the rape as evidenced by the defendant's attempt to write on the complainant's stomach with a broken beer bottle.

Absent an abuse of discretion by the trial court, a sentence may not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) As the supreme court noted in *Perruquet,* a reasonable judgment as to the proper sentence depends upon many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. "The trial judge, in the course of the trial and the sentencing hearing, has an opportunity to consider these factors 'which is superior to that afforded by the cold record in this court.' [Citation.]" (*People v. Perruquet.*) Although the defendant's sentence in

the instant case was severe, we cannot say that the trial court abused its discretion in imposing the sentence.

For the foregoing reasons the judgment of the Circuit Court of Cook County is hereby affirmed.

Affirmed.

RIZZI, P. J., and McNAMARA, J., concur.