THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALBERT OLESCH, Defendant-Appellant.

First District (4th Division)   No. 84—2263

Opinion filed May 8, 1986.

Ackerman & Egan, Ltd., of Chicago (Allan A. Ackerman, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Christopher J. Cummings, and Mary Patricia Devereux, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Following a jury trial, defendant, Albert Olesch, was convicted of rape (Ill. Rev. Stat. 1981, ch. 38, par. 11—1), deviate sexual assault (Ill. Rev. Stat. 1981, ch. 38, par. 11—3), aggravated kidnaping (Ill. Rev. Stat. 1981, ch. 38, par. 10—2(a)(3)), and unlawful restraint (Ill. Rev. Stat. 1981, ch. 38, par. 10—3(a)). Olesch was sentenced to the Illinois Department of Corrections to serve concurrent terms of 50 years each for rape and deviate sexual assault under the extended term sentencing statute (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2 ); 30 years for aggravated kidnaping; and 3 years for unlawful restraint.

On appeal, Olesch contends that the trial court committed reversible error in that: (1) the State failed to prove him guilty beyond a reasonable doubt of the crimes charged against him; (2) prosecutorial misconduct during cross-examination of defense witnesses and during closing argument prejudiced his case; (3) the aggravated kidnaping conviction and sentence cannot be sustained because they are inconsistent with the jury's verdict; and (4) the trial judge improperly sentenced him to extended term sentences for rape and deviate sexual assault in violation of section 5—5—3.2(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)) where the offenses charged were not accompanied by exceptionally brutal or heinous behavior.

We affirm defendant's convictions and modify the sentences imposed by the trial court.

BACKGROUND

At trial, the victim, a 16-year-old girl, testified that on January 8, 1983, shortly after 7 p.m., she left her home at 62nd Street and Troy Avenue in Chicago to meet her friends at the Twist Candy Counter, a game room located at 55th Street and Spaulding Avenue. At that

time, she carried in her coat pocket two single dollar bills, a pencil, a blue barrette, a bus pass and some facial tissue.

After walking for about 10 minutes, the victim reached the area of 55th Street and Spaulding Avenue. At that time, a man, whom she later identified as defendant Olesch, approached her from behind, grabbed her around the neck and threatened to kill her if she screamed. When the victim struggled to escape, Olesch tightened his grip around the victim's neck and told her that he had a knife. Olesch forced the victim to walk down a gangway, through a yard and down an alley, all the time ordering her not to scream and reminding her that he was carrying a knife. When they reached the back of the house later determined to be located at 5635 South Spaulding, Olesch ordered the victim to walk toward the rear of the house and down a back stairwell. The victim stated that she was crying throughout the incident.

Further testimony at trial disclosed that the alley behind 5635 South Spaulding was lighted by artificial city lights on the date and times in question. The light partially illuminated the backyard and stairwell where Olesch had led the victim. The lighting was sufficient for the victim to determine that the stairs in the stairwell were red.

Once Olesch and the victim reached the bottom of the stairwell, Olesch instructed the victim to get undressed. The victim removed her winter jacket and all of the other clothing she was wearing. Olesch put all of the victim's clothing, except for her blouse, on the ground at the bottom of the stairs. Olesch then loosely tied the victim's blouse around her head covering her eyes. Olesch next ordered the victim to lie down on the concrete floor at the bottom of the stairs. At that time, Olesch climbed on top of the victim and inserted his penis into her vagina. He engaged in sexual intercourse with the victim for a few minutes. During that time, the blouse which Olesch had tied over the victim's eyes remained in place for only about a minute before it slipped off. The victim was then face to face with Olesch whose head was only about a foot away from the victim's own.

When Olesch finally removed his penis from the victim's vagina, he then instructed the victim to get onto her knees. After she did so, Olesch pushed the blouse back over the victim's eyes and forced his penis into her mouth for two or three minutes. During this period, the victim could see Olesch's brown boots as she looked down under the blouse.

When Olesch removed his penis from the victim's mouth, he instructed the victim to lie down on the stairs of the stairwell. Olesch again inserted his penis into the victim's vagina. During this second

act of sexual intercourse, the blouse covering the victim's eyes kept falling off of her face and Olesch would push it back up over her eyes. The victim testified that the lighting conditions on the stairs were better than on the concrete floor, and that while positioned on the stairs she saw Olesch's face from the distance of about one foot for a minute or two.

The victim also testified that Olesch had sexual intercourse with her two more times: once as she sat on the ledge at the top of the stairwell; and once on the sidewalk at the top of the stairs. The victim stated that the lighting conditions dramatically improved as Olesch positioned her further and further out of the stairwell towards the sidewalk. Because the blouse covering the victim's eyes continued to slip from her face, the victim had an unobstructed view of Olesch's face from a distance of inches for about another minute and one-half altogether.

Olesch next told the victim to go over to the ledge and kneel down. He then placed his penis in the victim's mouth for a second time, remaining in this position for a number of minutes. The victim testified that she could again see Olesch's brown boots.

Finally, Olesch instructed the victim to get dressed and threatened to kill her if she turned around to look at him. At that time, the victim observed Olesch going through the pockets of her winter jacket and pants. After the victim was dressed, Olesch brought her back into the alley. Olesch took the victim to the next block and instructed her to run for the next two blocks and not to turn around. The victim testified that she ran for about one-half block and turned around. Olesch was gone. The victim then ran to the Twist Candy Counter where she met a friend who assisted her in calling the police.

Chicago police officer James Munizzi testified that at approximately 8 p.m. on the night in question he monitored a call on his police radio concerning a rape victim at 55th Street and Spaulding Avenue. He drove to 5500 South Spaulding and found the victim and her friend standing on the corner. Officer Munizzi observed that the victim was emotionally upset and crying. The officer interviewed the victim who described the rapist as having blond hair, long sideburns, a moustache, wearing blue jeans, a jean jacket, another blue jacket, and brown boots. Officer Munizzi broadcast the description over the police radio and proceeded to drive to the scene of the rape with the victim.

As Officer Munizzi drove, the victim directed him to 5635 South Spaulding Avenue. On the concrete floor of the stairwell behind the house, Officer Munizzi spotted the victim's pencil and blue barrette which she carried from home in her jacket pocket. The officer called

for a police car to protect the scene of the crime and then drove the victim to Holy Cross Hospital in his squad car.

Chicago police officer James Lindeman testified that at approximately 8:20 p.m. he was in his squad car in Marquette Park when he monitored a broadcast over his police radio that a rape had occurred in the area and giving a description of the rapist. In response, Officer Lindeman drove north on Kedzie Avenue to 62nd Street. There, in front of Pat's Tap, located at 6428 South Kedzie Avenue, Officer Lindeman spotted Olesch, who fit the description he had just heard broadcast over his radio. Officer Lindeman noted that Olesch was reasonably tall, had light colored to blond hair, long sideburns and a moustache. Olesch was dressed in blue jeans, a jean jacket, a dark shirt and brown boots. Officer Lindeman followed Olesch into the bar. The officer informed Olesch that Olesch fit the description of a wanted offender and conducted a pat down search of Olesch which revealed that Olesch possessed a pocket knife. Officer Lindeman arrested Olesch and transported him to Holy Cross Hospital where Lindeman informed Officer Munizzi that he had arrested a suspect. Munizzi saw Olesch and, along with Officer Lindeman, noticed the odor of alcohol on Olesch's breath. Munizzi then transported Olesch to the eighth district police station where, after her examination and treatment at Holy Cross Hospital, the victim identified Olesch in a lineup as the rapist. Prior to the lineup the police found two single dollar bills in Olesch's pocket. After the lineup Olesch consented to giving the police his pants and underwear, as well as blood, pubic and head hair samples.

Dr. Betty Van Leuven examined the victim at Holy Cross Hospital. Dr. Van Leuven tested the victim for venereal disease and compiled a Vitullo Evidence Collection Kit which contained vaginal and oral smears and slides, and samples of the victim's head and pubic hair along with her underpants. Dr. Van Leuven testified that the victim had abrasions over her right upper back and the middle to lower portion of her spine. The victim's hymen was in shreds, and she had a tear along the posterior wall of her vagina. She stated that the victim was bleeding from the vaginal area. Dr. Van Leuven said that the victim was visibly upset, shaking and crying. The victim told Dr. Van Leuven that the rapist looked somewhat familiar to her, but she could not provide his name. Dr. Van Leuven stated she therefore listed Olesch as an unidentified white male in her report of the examination.

Karen Smith Johnson, a microanalyst at the Chicago police department crime laboratory, testified that she analyzed Olesch's clothing, blood sample and hair standards along with the victim's Vitullo

Evidence Collection Kit compiled by Dr. Van Leuven. Johnson noted that the vaginal swab and microscopic slides tested positive for the presence of intact spermatozoa, conclusive evidence that semen was present in the victim's vagina. Johnson also discovered that the victim's blouse was stained with human blood which matched the victim's blood type. In addition, Johnson collected eight pubic hairs from defendant's underwear. Of these, one of the hairs was morphologically similar to the victim's pubic hair and morphologically dissimilar to Olesch's pubic hair. However, Johnson could not say with scientific certainty that this pubic hair came from the victim.

In his own defense, Olesch testified that he did not attack and sexually assault the victim on the night in question. Olesch testified that he is unclear in his memory of that evening because he had been drinking for a number of hours that day. Olesch did, however, remember being at Clay's Tap, located at 3019 West 59th Street, and Gallagher's Tavern, located at 61st Street and Kedzie Avenue, and that he was arrested at Pat's Tap, located at 62nd Street and Kedzie Avenue. He does not remember which officer arrested him. Olesch did not know the times of his arrivals or departures from any of the taverns named above, nor did he remember how much time he had spent in each.

Defense counsel called six alibi witnesses on Olesch's behalf. The testimony of these witnesses placed Olesch in Clay's Tap between 1 p.m. and 2 to 3 p.m. and again between 6:45 p.m. and 7:15 p.m. or between 7 p.m. and 7:30 p.m. on the day of the rape. Their testimony placed Olesch in Gallagher's Tavern between 4 p.m. and 5:15 p.m., and from any time between 7:05 p.m. and 7:35 p.m. None of these witnesses wore watches and all based their concepts of time on the schedules of television programs and the hours that they were scheduled to work that night. These witnesses included a bartender and a former bartender at Gallagher's Tavern, both of whom were acquainted with Olesch; the former bartender's sister-in-law, a Chicago police officer, who did not know Olesch; two bartenders at Clay's Tap who did not know Olesch; and a friend of Olesch who was drinking with Olesch on January 8, 1983, until Olesch allegedly left Clay's Tap alone at about 7:15 p.m.

At the conclusion of the trial, the jury returned guilty verdicts against Olesch for rape, deviate sexual assault, aggravated kidnaping, and unlawful restraint, and acquitted Olesch on a charge of robbery. On September 10, 1984, he was sentenced pursuant to the extended term sentencing statute (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)) as previously indicated.

OPINION

I

Defendant Olesch first contends that the evidence adduced at trial was insufficient to prove him guilty beyond a reasonable doubt of rape, deviate sexual assault, aggravated kidnaping and unlawful restraint. Olesch specifically argues that the victim mistakenly identified him as her assailant, and that there was overwhelming evidence in support of his alibi defense.

■■ We begin our analysis by reflecting upon the well settled rule of law that a reviewing court is charged with the duty to examine the evidence in rape cases with an extraordinarily high standard of care. (*People v. Hubbard* (1967), 38 Ill. 2d 104, 111, 230 N.E.2d 220, 223; *People v. Qualls* (1961), 21 Ill. 2d 252, 257, 171 N.E.2d 612, 614; *People v. Oden* (1975), 26 Ill. App. 3d 613, 616, 325 N.E.2d 446, 448; *People v. Moore* (1972), 6 Ill. App. 3d 932, 935, 287 N.E.2d 130, 132.) Even so, we are ever mindful that the appellate court cannot encroach upon the function of the trier of fact to weigh the credibility of witnesses and assess the evidence presented at trial. (*People v. Brown* (1984), 122 Ill. App. 3d 452, 455, 461 N.E.2d 71, 74.) Indeed, reversal by the reviewing court is permissible only where the evidence is so palpably contrary to a finding of guilt, or so unreasonable, improbable or unsatisfactory, that it raises reasonable doubt of defendant's guilt. 122 Ill. App. 3d 452, 455, 461 N.E.2d 71, 74. See *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.

■■ In the case before us, we have carefully reviewed the record and the evidence contained therein, and in light of the applicable legal principles conclude that Olesch was proved guilty beyond a reasonable doubt of the crimes charged against him.

Olesch asserts that the fact that several alibi witnesses were unimpeached raises a reasonable doubt concerning his guilt. This same contention was raised by defendant in *People v. Dotson* (1981), 99 Ill. App. 3d 117, 424 N.E.2d 1319, where a rape conviction was affirmed despite defendant's contention that the victim misidentified defendant as her assailant. There the court stated:

> "It is the province of the jury to weigh and balance identification testimony against the alibi presented by the defense. (*People v. Smith* (1978), 59 Ill. App. 3d 480, 375 N.E.2d 941.) The jury is not obliged to believe alibi testimony over the positive identification of an accused, even if the alibi testimony is presented by a greater number of witnesses. *People v. Baker* (1979), 78 Ill. App.

3d 411, 396 N.E.2d 1174." (99 Ill. App. 3d 117, 122, 424 N.E.2d 1319, 1323.)

In the instant case, the victim testified that she had ample opportunity to view Olesch. Artificial city lights illuminated the area where the attacks occurred and the lighting conditions dramatically increased as Olesch positioned the victim further and further out of the stairwell and onto the sidewalk. Although Olesch covered the victim's eyes with her blouse, the victim testified that the blouse was tied so loosely that it continually slipped from her face. The victim stated that when the blouse did slip from her face she was face to face with Olesch at a distance of anywhere from one foot to only a few inches at any given moment.

The victim also described in exacting detail how Olesch grabbed her from behind and led her through the neighborhood to the stairwell where the sexual assaults occurred. The victim described the scene of the rape, the order in which she removed her clothing, and everything Olesch said and did to her during each assault. Our review of the record shows this testimony to be clear and convincing and so detailed, certain and free from doubt that the jury was not obliged to believe Olesch's alibi defense. (*People v. Brown* (1984), 122 Ill. App. 3d 452, 461 N.E.2d 71; *People v. Patterson* (1980), 90 Ill. App. 3d 775, 413 N.E.2d 1371.) Indeed, the minor discrepancies raised by Olesch as to the victim's recounting of the time that she left home on the night in question and whether she had ever seen Olesch before go only to the issue of credibility, since testimony need not be totally uncontradicted and unimpeached to be clear and convincing. *People v. Barr* (1980), 85 Ill. App. 3d 992, 407 N.E.2d 782.

Furthermore, the test of a positive identification is whether the witness and the accused were in close proximity for a sufficient amount of time under conditions adequate for observation. (*People v. Thomas* (1979), 72 Ill. App. 3d 186, 389 N.E.2d 1330.) After carefully reviewing the record we do not doubt that the victim had the opportunity to view Olesch for a sufficient time period in adequate lighting to positively identify him as her assailant. The nature of the acts of sexual intercourse and fellatio also establishes the requisite proximity of the victim and the accused to serve as a sufficient basis for the victim's positive identification of Olesch at both the lineup and in open court.

Moreover, there is ample evidence to corroborate the victim's identification of Olesch. Immediately after the incident, the victim informed a friend at the Twist Candy Counter of the attacks, and together they summoned the police. (See *People v. Witte* (1983), 115 Ill. App. 3d 20, 449 N.E.2d 966 (prompt complaint to the police of a rape held to cor-

roborate the victim's testimony).) The victim described her attacker to Officer Munizzi as a white male with blond hair, long sideburns and a moustache. She said that he was wearing blue jeans, a jean jacket, a dark blue shirt or jacket and brown boots. She said that her assailant told her that he had a knife. Officer Lindeman, the arresting officer, noted that Olesch had light colored to blond hair, long sideburns and a moustache. Lindeman stated that at the time of the arrest, Olesch was dressed in blue jeans, a jean jacket, a dark blue shirt and brown boots. Clearly, Olesch appeared very similar to the description given by the victim to Officer Munizzi and broadcast over Lindeman's police radio. When Lindeman confronted Olesch and conducted a pat down search, he discovered that Olesch was carrying a pocket knife.

Consequently, we note the absence of any variance in the victim's testimony regarding her assailant's clothing and physical description as was the case in *People v. Nellons* (1984), 130 Ill. App. 3d 908, 475 N.E.2d 208. In *Nellons*, this court found unimpeached alibi testimony sufficient to establish a reasonable doubt as to whether defendant was guilty of rape. There the alibi testimony established defendant's presence nearly 150 blocks from the scene of the rape, at the approximate time of the rape, wearing clothing and having a physical description different than that described by the victim. In contrast, the record before us discloses that Olesch was arrested near the scene of the rape, within a short time of the rape, wearing clothing and having a physical appearance remarkably similar to that described by the victim, and that the alibi testimony did not specifically account for his presence elsewhere at the time of the occurrence.

In our opinion, the victim's identification of Olesch as the offender is sufficiently corroborated in the record, just as the fact that the victim was raped is corroborated by the facts that certain contents of the victim's coat pocket were found at the scene of the crime; spermatozoa was found in the victim's vaginal smear; the victim's hymen was torn; and the victim was bleeding from the vaginal area. In view of the foregoing, we are unable to find that the evidence in the record is so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt as to Olesch's guilt. In fact, we believe the record indicates that the State presented overwhelming evidence of Olesch's guilt.

II

Olesch next contends that the cumulative effect of the prosecution's alleged misconduct during the trial prejudiced his case. In order to merit reversal, the prosecutorial misconduct complained of must be of such nature that the verdict would have been otherwise had the

prosecutor refrained from making the comments, and the comments must have been a material factor in his conviction. (*People v. Richard* (1980), 90 Ill. App. 3d 322, 413 N.E.2d 5.) In our view, based on the entire record, the remarks complained of were not material factors in Olesch's conviction, nor did they result in substantial prejudice to his case.

Olesch first complains that the prosecutor improperly questioned a witness regarding the victim's prior out-of-court statement to that witness that she had seen Olesch before the time of the attacks; that repeated references to Olesch's nickname of "Smoodie" improperly led the jury to believe that this nickname arose from wrongdoing; and that inquiring of certain alibi witnesses as to whether, for all they knew, Olesch could have left the various taverns and attacked the victim deprived him of a fair trial.

At trial, Dr. Van Leuven testified, over defense counsel's objection, that the victim told her that she had seen Olesch before the attacks. On appeal, defense counsel argues that it was improper for the prosecutor to introduce the victim's prior statement, consistent with the victim's trial testimony, because it was not contained in Dr. Van Leuven's report, and that the statement was inadmissible evidence.

■ It is the general rule that testimony of a prior statement consistent with trial testimony is not admissible evidence, the exception being where such a statement is used to refute an express or implied charge that a witness' testimony is a recent fabrication. (*People v. Emerson* (1983), 97 Ill. 2d 487, 455 N.E.2d 41; *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363; *People v. Faysom* (1985), 131 Ill. App. 3d 517, 475 N.E.2d 945.) Here defense counsel impeached the victim, demonstrating through cross-examination that she could not remember whom she told that she had seen Olesch before the incident. Further, defense counsel showed through cross-examination of Officer Munizzi that the victim did not report to the police officer her belief that she had seen Olesch before when it would have been natural for the victim to do so. Thus, the record evinces a clear implication by defense counsel that the victim's trial testimony was a recent fabrication, since none of the police officers or witnesses which the victim encountered after the attacks reported the victim's statement that she had seen Olesch before. (Indeed, defense counsel sets forth a similar argument in his brief.) This implication arose principally through defense counsel's own efforts, and the prosecutor was therefore justified in his efforts to refute this charge. Even if we were to find that the State's attempt to bolster the victim's identification testimony was error, such error was not prejudicial to Olesch given the overwhelming evidence of his guilt.

It is also clear to us from the record that the other allegations of prosecutorial misconduct regarding use of Olesch's nickname and queries as to whether certain alibi witnesses knew that defendant did not commit the charged offenses after he left various neighborhood bars did not prejudice Olesch at trial. Although we are not convinced that the prosecutor's motives for making these remarks were purely to explain, qualify or rebut the direct testimony which preceded them, it is abundantly clear from the record and the discussion above that these remarks were not material factors in Olesch's conviction, nor did they result in substantial prejudice to the accused.

■ Similarly, Olesch's arguments that he was denied a fair trial by various comments made by the prosecutor during closing argument are equally doomed. Defense counsel's terse review of the record raises a number of miniscule points which he claims cumulatively evidence reversible error. A careful analysis of these points in light of the entire record does not show this to be true. Although defendant is guaranteed a fair trial, this does not mean that the trial must be perfect. (*Lutwak v. United States* (1953), 344 U.S. 604, 97 L. Ed. 593, 73 S. Ct. 481; *People v. Ruiz* (1982), 94 Ill. 2d 245, 447 N.E.2d 148; *People v. Kirkwood* (1959), 17 Ill. 2d 23, 160 N.E.2d 766; *People v. DeFrates* (1946), 395 Ill. 439, 70 N.E.2d 591.) The record indicates that the jury was instructed by the trial court to consider only the evidence presented at trial; that they were to disregard statements made in argument not based on the evidence; and, that the State has the burden of proving its case. In our opinion, the court's actions cured any prejudice that might have resulted from errors cited by defense counsel, regardless if considered singularly or cumulatively, and that the comments complained of were not sufficiently improper so as to compel reversal.

### III

■ Olesch also contends that because he was acquitted of the charge of robbery, he was improperly convicted of aggravated kidnaping. The State, in turn, maintains that Olesch was properly convicted of aggravated kidnaping where the jury found that Olesch committed rape and deviate sexual assault upon the victim. We agree with the State's position that the aggravated kidnaping verdict must be sustained.

Prior to trial, Olesch was indicted for, *inter alia*, three counts of aggravated kidnaping. Each of these counts was based on one of the three underlying felonies of rape, deviate sexual assault and robbery. This is clearly displayed in both the record and in group appendix two attached to Olesch's brief. These multiple counts of aggravated kidnap-

ing were sent to the jury in a single instruction, based on Illinois Pattern Jury Instruction, Criminal, No. 8.05 (2d ed. 1971), stating:

> "To sustain the charge of aggravated kidnaping, the State must prove the following propositions:
>
> *First*: That the defendant acted knowingly; and
>
> *Second*: That the defendant, by force or threat of imminent force, carried [the victim] against his [*sic*] will; and
>
> *Third*: That when the defendant did so he intended secretly to confine [the victim] against his [*sic*] will; and
>
> *Fourth*: That the defendant committed rape, deviate sexual assault, or robbery upon her;
>
> If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

Olesch posits that the general verdict of aggravated kidnaping cannot be sustained under this instruction since one of the underlying felonies, listed in the fourth "proposition" (*i.e.* robbery), has not been proved beyond a reasonable doubt.

Although it is apparent to us that the instruction as given might be interpreted as Olesch suggests, for us to overturn Olesch's conviction for aggravated kidnaping merely because the jury acquitted Olesch of robbery would be to ignore the evidence in this case. Momentarily placing the other convictions aside, we have already determined that Olesch was proved guilty beyond a reasonable doubt of the substantive charges of rape and deviate sexual assault. This being so, two of the underlying felonies, (*i.e*, rape and deviate sexual assault) found in proposition four of the contested instruction were proved as well. As such, we think the jury correctly convicted Olesch of the two of the three counts of aggravated kidnaping listed in the grand jury's indictment and charged against him since the other elements of kidnaping listed in the contested instruction have clearly been met by the proof in this case.

We note that this court has long held errors in giving or refusing to give instructions to be harmless where the evidence is so clear and convincing that the verdict could not have been different. (See *People v. Moore* (1983), 95 Ill. 2d 404, 447 N.E.2d 1327; *People v. Barnes* (1983), 117 Ill. App. 3d 965, 453 N.E.2d 1371.) Although the cases in this area have embraced factual situations where the error occurred in either the trial court's refusal to give or in the actual giving of an instruction

itself, we do not believe that justice would be offended in applying this harmless error rule to the instant case, where the evidence so clearly supports a finding of guilt on two counts of aggravated kidnaping despite Olesch's acquittal on the charge of robbery. We emphasize that the evidence is sufficient to prove Olesch guilty beyond a reasonable doubt of the crimes charged against him, including aggravated kidnaping. This being the case, Olesch has failed to make any specific showing of prejudice due to the trial court's giving of the contested instruction. *Cf. United States v. Brown* (7th Cir. 1984), 739 F.2d 1136, *cert. denied* (1984), *Kenngott v. United States* (1984), 469 U.S. 933, 83 L. Ed. 2d 268, 105 S. Ct. 331.

## IV

■ Finally, we address Olesch's argument that the extended term sentence he received was excessive and improper in that the record fails to disclose the aggravating factors which warrant imposition of the concurrent 50-year terms for his convictions of rape and deviate sexual assault.

Section 5—5—3.2(a) of the Unified Code of Corrections sets forth factors in aggravation to be considered by the sentencing court in determining whether a term of imprisonment or an extended term (more severe) sentence should be imposed. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(a).) Section 5—5—3.2(b)(2) provides that the trial court may consider as a reason to impose an extended term sentence that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(2).) In the instant case, the sentencing court found Olesch's conduct to be exceptionally brutal stating, "[I]f that isn't brutal and heinous and wanton cruelty, then I suppose there is no such definition for the words heinous, brutal and wanton." We, however, do not agree with this assessment of Olesch's conduct based on the record in this case.

At the sentencing hearing, the court emphasized the fact that the victim was 16 years old at the time of the offense; that Olesch threatened to kill her; and that the victim was forced to perform sexual acts in various positions. We note, however, that the victim never saw a weapon; that she was never battered or slapped about; that she received only emergency room treatment after the incident; and that no other physical injury is demonstrated. In addition, the trial court gives little, if any, consideration of the facts that Olesch, 27 years old at sentencing, had neither a prior juvenile nor criminal record.

Although we share the outrage exhibited by the trial court's highly

charged remarks at sentencing, we do not believe that the record supports the sentence imposed. The trial judge obviously overlooked the fact that implicit in the crimes of rape and deviate sexual assault is a concurrent element of force or threat of force which is a necessary component of the offenses themselves. (See Ill. Rev. Stat. 1981, ch. 38, pars. 11—1, 11—3.) We do not doubt that Olesch's conduct evidences the force or threat of force elements of rape and deviate sexual assault noted above; however, we cannot allow the same force to be equated with the "exceptional brutality" needed in order to justify the imposition of an extended term sentence as the trial court has done here.

In *People v. Pendleton* (1979), 75 Ill. App. 3d 580, 597-98, 394 N.E.2d 496, 509, a rape case, this court stated:

> "Rape is one of the most brutal acts one human being can inflict upon another. 'It is highly reprehensible, both in a moral sense and in its almost total contempt for the personal integrity and autonomy of the female victim ***. Short of homicide, it is the "ultimate violation of self." ' *Coker v. Georgia* (1977), 433 U.S. 584, 597-98, 53 L. Ed. 2d 982, 992-93, 97 S. Ct. 2861, 2868.
>
> Nevertheless, no matter how reprehensible a particular offense may be, it remains our obligation to turn back the State's encroachment upon the constitutional rights of its citizens. The attainment of justice often-times compels a difficult accommodation among conflicting societal interests."

In our opinion, the attainment of justice in this case compels us to reduce Olesch's sentence under the authority of Supreme Court Rule 615(b)(4) (87 Ill. 2d R. 615(b)(4)). This applies likewise to his 30-year sentence for aggravated kidnaping which we find to have been overly severe and equally affected by the trial court's sentencing conclusions.

In sum, we hold that defendant was proved guilty beyond a reasonable doubt of the crimes charged against him; that the alleged acts of prosecutorial misconduct did not prejudice his case; that his conviction for aggravated kidnaping is not inconsistent with the verdict; and that his sentence should be reduced to concurrent terms of 15 years for rape, 15 years for deviate sexual assault, and 5 years for aggravated kidnaping. We sustain Olesch's sentence for three years on the charge of unlawful restraint.

Accordingly, the judgment of the circuit court of Cook County is affirmed, as modified.

Affirmed.

JIGANTI and McMORROW, JJ., concur.