THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ALCED GREEN, Defendant-Appellant.

First District (5th Division)   Nos. 85—2522, 86—2916 cons.

Opinion filed December 16, 1988.

Steven Clark and Jeffrey A. Walker, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry, James E. Fitzgerald, and Aaron Iverson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Defendant Alced Green was charged with rape, deviate sexual assault, indecent liberties with a child, and aggravated incest. The victim, E.C., was defendant's 13-year-old daughter. After having been found unfit to stand trial, defendant was committed to Manteno Mental Health Center for treatment. Approximately one year later, he was found fit to stand trial. After a bench trial, he was found guilty of all of the charges and was sentenced to a 40-year extended prison term. Defendant appeals his sentence and, alternatively, his convictions on the basis of an inadequate fitness hearing. He also appeals the denial of his motion for a new trial on the ground of newly discovered evidence. These two appeals have been consolidated.

The facts are mostly undisputed. On the morning of January 14, 1984, defendant picked up his daughter at her home, where she lived with her mother and sister. The two of them spent the day visiting relatives and started to return to E.C.'s home at approximately 9 p.m. They got off a bus two blocks before the right stop and defendant, whom E.C. said had been drinking, went into an alley to throw up. When he returned, they went into a nearby building to an empty,

first-floor room that was lit only by a streetlight shining through the window. Defendant told E.C. that he was not her father and that she should take off her clothes. When she first refused, he started to undress her and she finally did as she was told. Subsequently, defendant forced his daughter to commit three acts of fellatio, two acts of vaginal intercourse, and one act of anal intercourse. During this time, E.C. heard people in the alley and screamed for help. Defendant then slapped her and threatened her with a knife. Afterwards, defendant told E.C. that she was still his baby and began to cry.

Defendant and E.C. arrived at her home around 12:15 a.m. E.C.'s mother testified that when defendant dropped his daughter off he appeared very sad and said, "[I]f only I had a bullet." After defendant left the home, E.C. told her mother of the occurrence and the police were called. Police officers took E.C. and her mother to the building, where they found E.C.'s underwear, belt, gloves, and a knife. E.C. was then taken to a hospital for examination where tests confirmed that sexual intercourse had recently taken place.

On June 26, 1984, Dr. Gilbert Bogen of the psychiatric institute of the circuit court of Cook County examined defendant and found him to have been legally sane at the time of the offense, but incompetent to stand trial on the examination date. A year later, both counsel stipulated that defendant had been reexamined by Dr. Bogen, who would testify that he was now mentally fit to stand trial with medication for testimonial purposes. The doctor found that defendant understood the nature of the charges and was able to cooperate with his attorney. After the stipulation, defense counsel stated that he believed defendant would cooperate with him and then asked defendant if he would, to which defendant responded affirmatively.

E.C. and her mother testified at trial. No evidence was presented on defendant's behalf. The trial court found defendant guilty on all counts and sentenced him on the rape and deviate sexual assault convictions, noting that the indecent liberties with a child and aggravated incest convictions merged into the former charges. Factors in aggravation included the victim's age (13), the fact that she was defendant's daughter, and the threatening of her with a knife. Mitigation factors consisted of defendant's age (31), no prior felony convictions, his unhappy childhood, and past problems with alcohol and drugs. In addition, defendant had a history of psychiatric problems and short hospitalizations therefor. Defense counsel called the court's attention to defendant's showing of immediate remorse after the offense and requested a six-year sentence. The court gave defendant an extended-term sentence of 40 years after finding that the offense was accompa-

nied by exceptionally brutal or heinous behavior indicative of wanton cruelty.

Thereafter defendant filed a motion for a new trial based on newly discovered evidence. At the hearings on the motion, two witnesses testified for defendant. Ethel Kitchen, with whom defendant had lived off and on for about nine years, said she thought of him as a son. She alleged that E.C. also had lived with her at various times, and testified that E.C. told her that defendant had not raped her; she was instead raped by her mother's boyfriend. Kitchen said that she never had a chance to tell defendant's lawyer about the conversations, although she had told defendant. Kitchen's granddaughter, Marcella Webster, also testified that E.C. had told her that she had been raped by her mother's boyfriend, not her father. E.C. denied making any of these statements and testified that she had never lived in, or stayed overnight at, Kitchen's home. E.C. stated that after defendant's trial, Kitchen had tried to get her to say the boyfriend was the offender. After the hearings, the trial court denied the motion for a new trial, stating that it did not believe the testimony of either Kitchen or Webster.

On appeal, defendant contends that (1) his extended-term sentence based on wanton and heinous behavior was improper; (2) the trial court's reliance upon stipulated testimony of the examining psychiatrist as to defendant's mental fitness to stand trial was error; (3) defendant received ineffective assistance of counsel because of his attorney's stipulation to defendant's restoration to fitness and because defense counsel failed to call certain witnesses on his behalf; and (4) the trial court's denial of his motion for a new trial was an abuse of discretion.

We affirm defendant's convictions but must reduce his extended-term sentence for the following reasons.

■■ With respect to defendant's contention that his fitness hearing was inadequate, the opinion set forth in *People v. Lewis* (1984), 103 Ill. 2d 111, 468 N.E.2d 1222, is controlling. In *Lewis*, the court considered restoration to fitness hearings in which stipulations as to what the examining psychiatrist would testify if called to the stand. The court distinguished the earlier cases of *People v. Reeves* (1952), 412 Ill. 555, 107 N.E.2d 861, and *People v. Greene* (1981), 102 Ill. App. 3d 639, 430 N.E.2d 219, in which it was held to be error to base a finding of fitness solely on unsupported stipulations. And, stipulations as to the fact of fitness, as opposed to psychiatric opinion testimony which would have been given, are improper. In approving the use of stipulations concerning the examining psychiatrist's opinion,

the *Lewis* court noted that a trial court may consider such stipulations along with personally observing a defendant in determining one's fitness to stand trial.

This is precisely the situation in the present case. The trial court considered the stipulations that Dr. Bogen found no evidence of mental illness and that defendant could understand the nature of the charges and could cooperate with his defense counsel. Upon considering such stipulations and personally observing defendant, the court can find a defendant fit, seek more information, or find the evidence insufficient to support a restoration to fitness finding. (*Lewis*, 103 Ill. 2d at 116, 468 N.E.2d at 1225.) In the present case, the trial court sought more evidence by questioning defense counsel, which queries were answered affirmatively by both him and defendant. Subsequently, the court found defendant fit. The trial court's procedures fall squarely within the parameters of the *Lewis* holding. Accordingly, we find no merit to defendant's arguments on this issue. Consequently, counsel was not ineffective merely because he answered the court's questions.

■ We also reject defendant's assertion of ineffective assistance of counsel because of the failure to call Kitchen and Webster as witnesses during trial. The standard used to determine ineffective assistance of counsel requires a defendant to show both a deficiency in counsel's performance and resultant prejudice; prejudice occurs where it is demonstrated that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Defendant has made no such showing here, neither as to deficient performance nor as to prejudice.

■ Defendant alleges that defense counsel knew prior to trial of the existence of both Kitchen and Webster, and his failure to investigate was unreasonable. However, the record does not support this assertion. At the post-trial hearing, Kitchen stated that she did not contact the public defender's office but was waiting for someone to contact her regarding the time of trial. It is not clear whom she expected to contact her—possibly defendant or his attorney. There is no indication that defense counsel was aware of Kitchen or her willingness to testify for defendant. The only awareness counsel had of Webster's existence was the inclusion of her statements, which were not favorable to defendant, in a detective's report. It was recorded that Webster had told the detective that she thought E.C. was telling the truth and that Webster believed that E.C. had been raped.

These facts are inadequate to support an allegation of incompe-

tency. Defendant's reliance on *Sullivan v. Fairman* (7th Cir. 1987), 819 F.2d 1382, for the proposition that counsel had a duty to investigate is misplaced. In *Sullivan*, the court held that defense counsel's failure to investigate was unreasonable where, prior to trial, he knew the names and addresses of five witnesses who had made either exculpatory or inconsistent statements to the police. The *Sullivan* court expressly held that the duty to investigate was violated under the specific circumstances of that case, noting that a court should apply a "heavy measure of deference" to counsel's decisions not to investigate. *Sullivan*, 819 F.2d at 1391-92.

We find nothing in the present record that would indicate that counsel should have been alerted to a need for further investigation. Nor does the record show that defendant was prejudiced by not having Kitchen and Webster testify at his trial. However, it is unnecessary to discuss the prejudice issue since defense counsel's performance was not deficient.

■ It is well settled that newly discovered evidence used as a basis for a new trial must be so conclusive as to probably change the outcome in a new trial. Moreover, it is within the court's discretion whether to grant a new trial and its decision will not be disturbed absent a manifest abuse of that discretion. (*People v. Carpenter* (1979), 74 Ill. App. 3d 770, 393 N.E.2d 50.) Kitchen and Webster testified at the first of two hearings on the motion for a new trial. E.C. testified at the second hearing. Her testimony contradicted that of the prior two witnesses and was consistent with her trial testimony. It is the function of the trier of fact to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn therefrom. *People v. Woods* (1988), 173 Ill. App. 3d 244, 492 N.E.2d 1381.

■ In our case, the trial court stated that it did not believe the testimony of Kitchen and Webster and denied defendant's motion. An appellate court cannot encroach upon the function of the trier of fact to weigh the credibility of witnesses. (*People v. Olesch* (1986), 143 Ill. App. 3d 577, 492 N.E.2d 1381.) Accordingly, we cannot find that the trial court's decision was an abuse of its discretion.

Defendant's final issue on appeal concerns the imposition of an extended-term sentence on the basis of heinous and wanton behavior. The State argues that such sentence is appropriate because of E.C.'s age, the fact that she was defendant's daughter, his use of a knife, the separate sexual acts involved in the offenses, and the probable long-term emotional harm to E.C.—all of which factors the State alleges fall within the confines of the term "brutal and heinous."

■ Although defendant's conduct may well be considered brutal or heinous according to our societal rules, it does not fall within the legal meaning of the term. In Illinois, a defendant may be given an extended-term sentence if he has been convicted of two felonies of the same or greater class within the last 10 years, or if the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.2(b)(1), (b)(2).) The trial court relied on the brutal or heinous factor in sentencing defendant. The court stated that the use of a knife, E.C.'s age and her relationship to defendant,˙ and the specific sexual acts themselves are "by [their] very nature heinous behavior indicative of wanton cruelty."

E.C. was not cut by the knife nor was she physically bruised. She stated that defendant slapped her one time. Defendant's relationship to E.C. comprised an element of the aggravated incest offense. The sexual acts involved are requisite elements of the offenses of rape and deviate sexual assault. And, "implicit in the crimes of rape and deviate sexual assault is a concurrent element of force or threat of force which is a necessary component of the offenses themselves." (*People v. Olesch* (1986), 143 Ill. App. 3d 577, 591, 492 N.E.2d 1381, 1391.) In *Olesch*, defendant forced a 16-year-old girl to perform various sexual acts by threatening to kill her. The victim never saw a weapon and was not battered or slapped about and sustained no other physical injury. The defendant had no prior criminal record. The *Olesch* court reduced his sentence because it was improper to equate the force used to necessarily commit an offense with the exceptional brutality factor necessary for an extended term. (*Olesch*, 143 Ill. App. 3d at 591, 492 N.E.2d at 1391.) "[Extended-term provisions were] not intended to convert every offense into an extraordinary offense subject to an extended-term sentence." *People v. Evans* (1981), 87 Ill. 2d 77, 88-89, 429 N.E.2d 520, 525.

It is apparent that, in sentencing defendant, the trial court improperly relied on factors constituting the elements of the offenses of which he was convicted. No matter how morally reprehensible his conduct was, we cannot find that it rose to the level of heinous behavior under our legal precepts. We must also take notice of the facts that defendant was immediately remorseful, his lack of prior criminal convictions, and his history of mental illness. Since, legally, there was no brutal or heinous behavior, we find that defendant's extended-term sentence was error and must be reduced pursuant to Supreme Court Rule 615(b)(4) (107 Ill. 2d R. 615(b)(4)).

In conclusion, we affirm defendant's convictions and reduce his

sentence to concurrent terms of 15 years for the rape conviction and 15 years for the deviate sexual assault conviction. Accordingly, the judgment of the trial court is affirmed, as modified.

Affirmed.

LORENZ, P.J., and PINCHAM, J., concur.